UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EXTENET SYSTEMS, INC.,

                Plaintiff,

     v.                             Docket No. 1:20-cv-10394 (WGY)

TOWN OF HULL, et al.,

                Defendants.

**MEMORANDUM OF REASONS IN SUPPORT OF SUSAN SHORT GREEN, JANE LOEFFLER, AND BETHANY BARTLETT'S MOTION TO INTERVENE**

The Plaintiff Extenet Systems, Inc. ("Extenet") filed this action seeking declaratory and injunctive relief under the federal Telecommunications Act of 1996 ("TCA") and "expedited review" under 47 U.S.C. § 332(c)(7)(B)(v) of the defendant Town of Hull Board of Selectmen's ("Board") denial of a "grant of location" permit under G.L. c. 166, § 22 for the installation of "small wireless facilities" on three utility poles located in the public right-of-way in the Town of Hull, Massachusetts. Extenet and the Board have since entered into a contingent settlement agreement, resulting in the *issuance* of the grant of location permit that was previously denied. Susan Short Green, Jane Loeffler, and Bethany Bartlett (the "Proposed Intervenors"), timely appealed the grant of location permit in state court (the "State Court Complaint") and now seek to intervene in this federal action to protect their rights in reliance on the Affidavit of Proposed Intervenor Green dated January 5, 2021 ("Green Affidavit").

**Summary of the Pertinent Facts**

On September 23, 2019, Plaintiff Extenet applied for a grant of location permit from the Defendant Board to install three "small wireless facilities" on utility poles in the Town of Hull. Complaint, ¶ 62.[1] The utility poles are all located in the public right-of-way, and owned and managed by the Defendant Hull Municipal Light Plant. Id., ¶¶ 41, 44. Extenet is proposing to replace the existing poles, and add its equipment to the new poles. Id., ¶ 44. The Proposed Intervenors live in close proximity to one of the poles, identified as "Pole 56" in Extenet's application. See, State Court Complaint, ¶ 50.[2] Pole 56 is located in front of proposed intervenor Jane Loeffler's home at 72 B Street in Hull, approximately 2-3 feet from her property. Id., ¶ 51. Pole 56 is approximately fifty feet from proposed intervenor Susan Short Green's property at 71 B Street, and approximately one hundred feet from proposed intervenor Bethany Bartlett's property at 70 B Street. Id., ¶¶ 54-55. The location of Pole 56 in relation to the Proposed Intervenors' properties is depicted on the photographs attached to the Green Affidavit as Exhibit C.

Extenet's application was governed by the Town of Hull's "SWF Wireless Facilities and Similar Structures Policy, Rules and Regulations" ("SWF Regulation"), which lays out the procedures for applying for a grant of location permit for a small wireless facility, the information required in the application, and the standards of review for such applications.[3] For example, under Section 11(iv) of the SWF Regulation, wireless facilities and antennas shall

---

[1] Extenet had previously applied for the same grant of location permit for the same three utility poles on June 5, 2019, which was denied on September 5, 2019. Complaint, ¶¶ 58-59. Extenet did not appeal from that denial in either federal or state court.
[2] A copy of the State Court Complaint is attached to the Affidavit of Susan Short Green as Exhibit A.
[3] A copy of the SWF Regulation is attached to Green Affidavit as Exhibit D.

not be placed in front of residential structures, and shall not interfere with views from residential structures. Additionally, the SWF Regulation requires applicants to submit documentation evidencing compliance with the state's noise regulation. SWF Regulation, § 6(i). As discussed further below, and in the Proposed Intervenors' State Court Complaint, Extenet's proposed "small wireless facilities" violate these, among other, of the SWF Regulation's performance standards, directly impacting the Proposed Intervenors' real property interests. See, e.g., State Court Complaint, ¶¶ 24, 58, 59, 63, 67, 71, 74, 76, and 77.

On October 3, 2019, the Board's attorney sent Extenet's representative a letter informing him of the SWF Regulation, and enclosing an "Application Completeness Review" memorandum, itemizing Extenet's application deficiencies. Federal Court Complaint, ¶ 73. Extenet responded on November 26, 2019, providing some additional details on its proposed wireless facilities, but more broadly refusing to provide supporting information for many of the conclusory statements in its initial application. State Court Complaint, ¶¶ 24-25, 94.  On January 27, 2020, the Board denied Extenet's application on three grounds: (i) Extenet's failure to disclose the maximum capacity and power output from its facilities; (ii) Extenet's failure to demonstrate a coverage gap justifying its application; and (iii) Extenet's failure to provide an engineer's certification of safety. See, Board's January 26, 2020 decision, attached to the Green Affidavit as Exhibit B.

On February 26, 2020, Extenet filed its Complaint in this action.  It did not file an appeal from the Board's denial in state court. State Court Complaint, ¶ 40.  In Extenet's federal court complaint, it alleges that Hull's SWF Regulation is facially pre-empted by the TCA because it "effectively prohibits companies that are seeking access to public rights-of-way in Hull for deployment of small cells…" Federal Court Complaint, ¶ 128.  Extenet further alleges in its

federal court complaint that the Board's denial of its application violates the TCA, 47 U.S.C. §§ 253 and 332(c)(7). Federal Court Complaint, Counts II and III.  Extenet further alleges that the Board's actions in reviewing the grant of location application violated the time standards set forth in the TCA regulations, 47 CFR § 1.6003. Federal Court Complaint, ¶¶ 72, 151.

On or about July 3, 2020, the Board entered into a contingent settlement agreement with Extenet, under which the Board agreed to issue the grant of location permit under G.L. c. 166, § 22, despite continued failure to comply with the SWF Regulation, upon Extenet's submission of certain supplemental information. State Court Complaint, ¶ 47. See also, Settlement Agreement attached to the Green Affidavit as Exhibit E.[4]  On July 21, 2020, the Board and Extenet reported the case settled and jointly moved to stay this action, citing their settlement agreement.  In their Motion, the parties explained that there would be a further vote by the Board on Extenet's application, and if there is an appeal from the Board's vote, "the parties will require time to review such appeal and determine its effect on the Settlement Agreement and the proceedings before this Honorable Court." See, Mot. for Stay (Docket Entry No. 7).

On October 21, 2020, the Board convened a public hearing and voted to issue the grant of location permit. State Court Complaint, ¶ 78.  On December 21, 2020, the Proposed Intervenors filed a timely complaint in Massachusetts Superior Court (Plymouth), pled as a certiorari appeal from the Board's decision pursuant to G.L. c. 249, § 4. Green Aff., ¶ 1.

## Standard of Review – Intervention

There are two types motions to intervene under Rule 24 of the Federal Rules of Civil Procedure: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b).  Under Rule 24(a), courts apply a four-part inquiry to motions seeking intervention by

---

[4] The docket in this action does not indicate any activity between the filing of the Complaint and July 21, 2020.  The Rule 16.1 scheduling conference did not occur, and a Joint Statement was not filed by the parties.

right: (1) is the motion timely; (2) does the intervenor have an interest relating to the property or transaction which is the subject of the action; (3) is there a risk that the action may impair the intervenor's ability to protect its interest; and (4) is there a lack of adequate representation by existing parties? Nextel Communs. of the Mid-Atlantic, Inc. v. Town of Hanson, 311 F. Supp. 2d 142, 150 (D. Mass. 2004) ("Nextel"); Varsity Wireless, LLC v. Town of Boxford, 2016 U.S. Dist. LEXIS 195693 (D. Mass. 2016) (Docket No. 15-cv-11833) ("Boxford").

Under the permissive intervention standard of Fed. R. Civ. P. 24(b), the Court may permit a party to intervene if it has a "claim or defense that shares with the main action a common question of law or fact." In contrast to Rule 24(b), "when deciding whether permissive intervention is warranted under Rule 24(b), the Court 'can consider almost any factor rationally relevant,' and 'enjoys very broad discretion' in allowing or denying the motion. Boxford, at *6, quoting, Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).

    A.    *The Motion to Intervene is Timely.*

In Boxford, the Court observed that the pertinent factor on timeliness is prejudice to existing parties. Specifically,

> In stressing the importance of timely filing of a petition to intervene, courts have repeatedly emphasized that the concept of timeliness of a petition is not measured, like a statute of limitations, in terms of specific units of time, but rather derives meaning from assessment of prejudice in the context of the particular litigation. Thus, unjustified delay for a relatively short period of time can support denial of intervention where the prejudice to the other litigants would be significant. Similarly, much longer delays might not render the petition untimely where under the circumstances no prejudice would be suffered by the other litigants from allowance and the prejudice to the petitioner from denial would be serious.


Boxford, at **6-7, quoting, Puerto Rico Telephone Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura, 637 F.3d 10, 15 (1st Cir. 2011) (internal citations omitted).  Here, this action has been stayed by agreement of Extenet and the Board, and remains stayed while the parties "determine [the Proposed Intervenors' state court appeal's] effect on the Settlement Agreement" and this litigation. Mot. to Stay, p. 2.  As noted above, there has been no substantive activity in this action, and as such the proposed intervention does not prejudice any existing party.  This Motion is being filed just weeks after the Proposed Intervenors commenced their appeal in state court. And before the public hearing on October 21, 2020, Proposed Intervenors had no prior opportunity to object to the location permit on Pole 56. The settlement agreement was contingent because of the need for the October 21 public hearing. Had Proposed Intervenors brought this motion any sooner, it would have been rebuffed as premature for failure to exhaust administrative remedies before the Board. The motion is therefore timely under both Rules 24(a) and 24(b).

    B.    *The Proposed Intervenors Have a "Protectable Interest" that is At Risk of Being Impaired.*

To achieve Article III standing as independent litigants, intervenors must demonstrate an "injury in fact," which in the TCA context may be a threat to a "protectable interest" that "will be directly impaired by the construction of the tower." Indus. Communs. & Elecs. v. Town of Alton, 646 F.3d 76, 80 (2011) ("Alton"). See also, Nextel, 311 F. Supp. 2d at 150, citing, Butts v. Zoning Bd, of Appeals, 18 Mass. App. Ct. 249, 253-54 (1984) ("abutter has an interest in preventing an expansion of a nonconforming use on abutting property, and in preserving view from own property."); Boxford, supra; Varsity Wireless Inv'rs, LLC v. Town of Hamilton, 370 F. Supp. 3d 292, 296-97 (D. Mass. 2019).

In Alton, abutters to a proposed cell tower sought to intervene in a federal TCA action, where the Town settled with the tower company and agreed to the entry a consent decree that would have the effect of a "legally operative judgment that overrides state law." Alton, 646 F.3rd at 80.  The First Circuit held that while, ordinarily, municipalities are "free as a defendant to decline to defend or to settle on the best terms it can get," an intervenor can continue to litigate and defend the denial of zoning relief if it has standing to do so under Article III of the United States Constitution. Id., at 79.

As discussed above, the equipment proposed to be attached to Pole 56 violates the SWF Regulation, and as a result will interrupt the Proposed Intervenors' scenic views and quiet enjoyment of their property.  State Court Complaint, ¶¶ 50-51, 67, 74. The homes of Proposed Intervenors Jane Loeffler and Susan Short Green front on Beach Avenue, directly across from the beach and the Atlantic Ocean. State Court Complaint, ¶ 73.  The small wireless facility at Pole 56 is located on the corner of B Street and Beach Avenue, directly between the Proposed Intervenors homes and the beach, substantially interfering with their views of the beach and the ocean in violation of Section 11(iv) of the SWF Regulation. Id., ¶ 74.  Under Section 12, the SWF Regulation expresses three preferred general locations for small wireless facilities. Extenet's proposed wireless facilities do not meet any of the three preferred general locations. Id., ¶¶ 75-76.

Furthermore, Extenet relied upon a sound study that failed to comply with the SWF Regulation, averaging sound levels over 24 hours rather than measuring sound increases against ambient levels at specific times during the day.  State Court Complaint, ¶ 63.  As a result, loud noise events caused by these small wireless facilities throughout the day were able to be concealed on paper by the periods of time when little to no noise was being produced by the

7

equipment. The SWF Regulation also prohibits cooling fans from emitting sound in excess of 35 dBA "at the nearest residential occupied space including… porches,"; however, Extenet's own sound study indicates that the cooling fans associated with its facilities will produce sound levels ranging between 38 dBA to 51 dBA 20 feet away, which will reach the wrap-around porch attached to the house on Ms. Loeffler's property. Id., ¶¶ 64-67; SWF Regulation, § 10(d).  There are other provisions of the SWF Regulation violated by Extenet's facilities, which will directly aggrieve the Proposed Intervenors.  See, e.g., State Court Complaint, ¶¶ 24, 58, 59, 63, 67, 71, 74, 76, and 77.

The Proposed Intervenors in this case are therefore in the same position as the intervenors in Alton -  their "protectable interest" being their right under Massachusetts law to appeal the grant of location permit issued by the Board in state court, which they are directly harmed by. As in Alton, here there is a parallel state court action that could be affected by the federal court action.  The only difference here is that the parties' settlement agreement has not yet been offered as a consent decree.  That distinction is not material, however, as the Proposed Intervenors need not be forced to wait to seek intervention until after their rights have been affected. See, Boxford, at *10, n.6 (allowing intervention before consent decree was offered, and before a settlement agreement was even reached between the existing parties).

The Proposed Intervenors' rights are at risk in this federal action because Extenet and the Board could attempt to use the settlement agreement to foreclose Plaintiffs' state court relief before it has been adjudicated by obtaining a consent decree or judgment, which, like in Alton, could order the issuance of grant of location permit notwithstanding the permit that was issued and the subsequent state court action. Importantly, the existing parties practically concede the appropriateness of intervention here, where they acknowledged the effect of any state court

appeal from the Board's grant of location permit on these proceedings must be considered before this settlement can be fully effectuated. See, Mot. to Stay.

  C. *The Existing Parties Do Not Adequately Represent the Proposed Intervenors' Interests.*

Under Rule 24(a), the burden to show inadequate representation is on the intervenor, but it is "not onerous," and the intervenor "need only show that 'representation *may* be inadequate, not that it *is* inadequate." Nextel, 311 F. Supp. 2d, at 151, quoting, Conservation Law Found. of New England, Inc. v. Mosbacher, 966 F.2d 39, 44 (1st Cir. 1992).  In Nextel, the Court found that the town defendant would not adequately represent the intervenor's interests despite the fact that the town's interests had not even diverged at that point. Id., at 153 ("[T]here is a genuine potential for divergence of interests because, while the Town presently opposes construction of the tower, it might change or soften that position based on broader geographic and institutional interests."). In the Proposed Intervenors' absence, no party will represent the position that the Board's original denial decision did not violate the TCA, which would defeat the entry of a consent decree (if one is proposed). Alton, 646 F. 3d at 80.

Here, there is no question that the Board cannot, and will not, effectively represent the Proposed Intervenors' interests in preventing the installation of the small wireless facilities on the beachfront utility poles in close proximity to their homes. There can be no question that the Proposed Intervenors' interests have not been aligned with the Board's interests since at least when the Board reversed course and issued the grant of location permit to Extenet on October 21, 2020 under the settlement agreement.  Not only did the Board abdicate its defense of the denial decision, it undermined it by subsequently granting the permits.

The Proposed Intervenors intend to make arguments, establishing that the January 27, 2020 denial decision and SWF Regulations do not violate the TCA. See, Alton, at 80

(intervenors are "entitled to resist the entry of a decree that terminates their protectable rights unless a violation of the Act is proven."). The Proposed Intervenors' arguments will be similar to those accepted in a recent decision by this Court in Extenet Systems, Inc. v. City of Cambridge, D. Mass. Docket No. 19-cv-11836, 2020 U.S. Dist. LEXIS 154623, where the Court rejected almost identical TCA claims under both the First Circuit's "significant coverage gap" test and the legal standard set by a 2018 administrative ruling from the Federal Communications Commission.[5]

Finally, even if the Court finds that the Proposed Intervenors do not satisfy the criteria for "as of right" intervention under Rule 24(a), the Court should still exercise its discretion under Rule 24(b) to allow this Motion to Intervene. As noted above, the facts presented here are similar to several previous TCA cases, where municipal governments abdicated the defense of a denial of a necessary permit or approval. The Proposed Intervenors have timely appealed the Board's decision in state court, which could be undermined by a consent decree or other action in this Court in their absence. The lack of sufficient representation is more evident than it was in Boxford or Nextel, where the abutters' interests had not yet diverged from the municipal defendants. For these reasons, the Court should allow intervention here.

## Conclusion

The Proposed Intervenors satisfy the test for intervention under Rule 24(a), as informed by First Circuit precedent in the field of TCA claims. The Proposed Intervenors have brought a timely motion with a "protectable interest" in preserving their right to challenge the grant of location permit issued under state law. Even if the Court were to determine that the Rule 24(a)

---

[5] The Court's review of the Board's decision and SWF Regulation is *de novo*, and therefore the Court is not confined to reviewing the adequacy of the limited grounds for denial stated in the Board's January 26, 2020 decision. VWI Towers, LLC, 404 F.Supp. 3d at 467.

criteria have not been satisfied, the Proposed Intervenors respectfully request that the Court exercise its discretion to allow intervention under Rule 24(b).

                                        Respectfully submitted,

                                        By their attorneys,

                                        /s/ Daniel C. Hill

                                        _____
                                        Daniel C. Hill (BBO #644885)
                                        Kaitlyn Baptista (BBO #693392)
                                        Dennis A. Murphy (BBO #645168)
                                          *Of Counsel*
                                        HILL LAW
                                        6 Beacon Street, Suite 600
                                        Boston, MA 02108
                                        (617) 494-8300
                                        dhill@danhilllaw.com

Dated: January 15, 2021

### Certificate of Service

     In accordance with Fed. R. Civ. P. 5, and L.R., D. Mass. 5.2(b) & 5.4(c), I hereby certify that a true copy of the above document was served upon the attorney of record for each party by ECF on this date.

                                        /s/ Daniel C. Hill

                                        _____
                                        Daniel C. Hill (BBO #644885)