# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                        Superior Court Department
                                                    No. 2083CV 1931

```
                                              )
SUSAN SHORT GREEN, JANE LOEFFLER,             )
and BETHANY BARTLETT,                         )
                                              )
                         Plaintiffs,          )
                                              )
     v.                                       )
                                              )
EXTENET SYSTEMS, INC., the BOARD OF           )
SELECTMEN of the TOWN OF HULL, and the        )
HULL MUNICIPAL LIGHT PLANT,                   )
                                              )
                         Defendants           )
                                              )
```

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

DEC 2 1 2020

Clerk of Court

## COMPLAINT

1.      This is a certiorari action pursuant to G.L. c. 249 § 4, appealing the decision of the

Hull Board of Selectmen (the "Board") granting permission to the defendant Extenet Systems,

Inc. ("Extenet") pursuant to G.L. c. 166, § 22 to install "small wireless facilities" on three utility

poles within the public rights-of-ways in the Town of Hull (the "Decision"). Extenet's

application for such approvals was materially deficient, and the proposed installations are

materially nonconforming to the applicable regulations. As such, the Board's Decision was

arbitrary, capricious, and in excess of its legal authority. A true and accurate copy of the

Decision is attached as Exhibit A.

2.      The Plaintiffs are also pleading common law claims of nuisance and trespass

against Extenet, and are seeking injunctive relief.

### The Parties

3.      Plaintiff Susan Short Green owns and resides at 71 B Street, Hull, Massachusetts,

and is aggrieved by the Decision.

4.     Plaintiff Jane Loeffler owns and seasonally resides at 72 B Street, Hull, Massachusetts, and is aggrieved by the Decision.

5.     Plaintiff Bethany Bartlett owns and resides at 70 B Street, Hull, Massachusetts, and is aggrieved by the Decision.

6.     Defendant Extenet Systems, Inc. is a Delaware corporation with a principal place of business at 3030 Warrenville Road, Suite 240, Lisle, Illinois.

7.     Defendant Hull Board of Selectmen is the duly-elected Board of Selectmen of the Town of Hull, a Massachusetts municipal corporation, with a principal place of business at Hull Town Hall, 253 Atlantic Avenue, Hull, Massachusetts.

8.     Defendant Hull Municipal Light Plant is a municipal electrical utility with a principal place of business at 15 Edgewater Road, Hull, Massachusetts.

**The Grant of Location Application**

9.     Extenet is in the business of building and providing wireless telecommunication services and facilities for wireless service providers like Verizon, AT&T, and T-Mobile.

10.     Wireless service providers pay Extenet to use its fiber optic cables and support equipment network to provide wireless coverage for their customers.

11.     Extenet's wireless support network includes antennas and supporting equipment attached to public utility poles located within public rights-of-way.

12.     In Hull, utility poles located within the public rights-of-way are owned and managed by the defendant Hull Municipal Light Plant, a municipal electric utility ("HMLP").

13.     Extenet has a license agreement with HMLP, called a "Pole Attachment Agreement," under which Extenet may, subject to approvals, attach cables, equipment and facilities to HMLP's poles around town.

14.     The Pole Attachment Agreement provides that such equipment may be attached to poles upon the issuance of a license by the HMLP, and that such attachments shall be "in accordance with the requirement and specifications" of "any governing authority having jurisdiction over the subject matter."

15.     Extenet first applied to the Board for a "grant of location" permit under G.L. c. 166, § 22 on June 5, 2019, to replace three utility poles on Beach Avenue in Hull with taller poles, and to attach to the poles "small wireless facilities" that comprise of, among other things, cabinets to hold radio transmitters, cable, and antennas at the top of the poles.

16.     After a public hearing held on August 22, 2019, the Board denied Extenet's application.

17.     Extenet did not appeal the Board's denial of its application.

18.     On September 9, 2019, the Board adopted a 20-page "Town of Hull SWF Wireless Facilities and Similar Structures Policy, Rules and Regulations" (the "SWF Regulation").

19.     The SWF Regulation lays out the procedures for applying for a grant of location permit for a small wireless facility, the information required in the application, and the standards used to determine whether the application will be approved.

20.     On September 23, 2019 Extenet re-applied for a grant of location permit for the same wireless facility installations on the same three public utility poles.

21.     On October 3, 2019, the Board's attorney sent Extenet's representative a letter informing him of the SWF Regulation, and enclosing an "Application Completeness Review" memorandum, itemizing Extenet's application deficiencies.

22.     On October 14, 2019, rather than supplementing its application with the required

information, Extenet demanded proof of the validity of the regulation and invoked the federal

Telecommunication Act (TCA) as governing its renewed application.

23.     On November 26, 2019, Extenet responded in writing to the Board's October 3,

2019 Application Completeness Review.

24.     In its November 26, 2019 submittal, Extenet provided some additional details on

its proposed wireless facilities, but more broadly refused to provide supporting information for

many of the conclusory statements in its initial application.

25.     On page 3 of its November 26, 2019 letter, Extenet refused to provide analysis on

the life expectancy of its equipment, including consideration of an expected transition to 5G

technology, as required by the SWF Regulations.

26.     Small wireless facilities, also known as "small cell towers," which are commonly

attached to public utility poles, are integral to the roll-out of 5G service for the wireless

telecommunication industry.

27.     On pages 4-6 of its November 26, 2019 letter, Extenet refused to provide back-up

data supporting its radio frequency (RF) emission report, disabling the Board from performing a

peer review of the anticipated radiation levels from the proposed antennas.

28.     Extenet defended its nondisclosure on federal law, claiming that municipalities

were prohibited from regulating RF emissions.

29.     The Board's peer review expert, David Maxson, explained in a memorandum

dated December 18, 2019 that the back-up data was needed to check Extenet's calculations to

confirm Extenet's representations that its RF emissions would remain below Federal

Communications Commission ("FCC") threshold limits.

30.     Extenet's application indicated that each pole would have a radio cabinet with one

"unit" that would contain four, 20-Watt radio transmitters.

31.     The Board noted in its review of Extenet's application that the cabinet could actually support *three* "units," each capable of containing four radios.

32.     Extenet's initial RF emission reports were based on a cabinet containing one "unit" and four radios, even though each pole could accommodate more radios in the event that Extenet enters into contracts with other wireless service providers.

33.     Under the SWF Regulation, applicants must disclose the maximum radio capacity for each pole and its attendant power outputs, in order to determine whether the poles at full capacity would cause RF emissions to exceed FCC standards.

34.     The FCC sets power intensity limits, known as "Maximum Permissible Exposure" thresholds, on wireless telecommunication antennas in order to limit human exposure to RF radiation.

35.     There is growing evidence that RF radiation emitted from wireless devices can have deleterious effects on human health, as well as on other animals and vegetation.

36.     The radiation exposure limits in the United States, set by the FCC, are much higher than those in many other industrialized countries.

37.     The TCA and the FCC's radiation exposure limits were adopted in the 1990's when the proliferation of "small wireless facility" installations on utility poles in front of people's homes was not contemplated.

38.     On January 27, 2020, the Board denied Extenet's second application on three grounds: (i) Extenet's failure to disclose the maximum capacity and power output from its facilities; (ii) Extenet's failure to demonstrate a coverage gap justifying its application; and (iii) Extenet's failure to provide an engineer's certification of safety.

39.     On February 26, 2020, Extenet filed a Complaint for Declaratory and Injunctive Relief in the United States District Court (Boston), alleging that Hull's denial of access to the public rights-of-way violated the TCA. See, Docket No. 20-cv-10394.

40.     Extenet did not file an appeal from the Board's denial in state court.

41.     In Extenet's federal court complaint, it alleges that Hull's SWF Regulation is facially pre-empted by the TCA because it "effectively prohibits companies that are seeking access to public rights-of-way in Hull for deployment of small cells…"

42.     Extenet alleges in its federal court complaint that the Board's denial of its application was improper under the TCA, 47 U.S.C. §§ 253 and 332(c)(7).

43.     Extenet further alleges in its federal court complaint that the Board's actions in reviewing the grant of location application violated the time standards set forth in the TCA regulations, 47 CFR § 1.6003.

44.     The allegations and claims asserted by Extenet in its federal court complaint are nearly identical to claims Extenet made against the City of Cambridge in a Complaint filed in the United States District Court on August 28, 2019, styled *Extenet Systems, Inc. v. City of Cambridge*, Docket No. 19-cv-11836.

45.     In the *Cambridge* case, the City of Cambridge denied a grant of location permit for small wireless facilities on utility poles in the public rights-of-way, based on Extenet's failure to provide information in accordance with the City of Cambridge's "Small Cell Wireless Policy."

46.     On August 26, 2020, the District Court allowed the City of Cambridge's Motion to Dismiss, rejecting all of Extenet's claims, including its attack on the validity of the Small Cell Wireless Policy and its claims that the City of Cambridge's denial constituted an "effective prohibition."

47.     On July 3, 2020, the Board settled its federal court case with Extenet, which required the Board to issue the grant of location permits under G.L. c. 166, § 22 upon Extenet's submission of certain supplemental information.

48.     The federal court has not yet approved the Board's settlement with Extenet.

49.     The Settlement Agreement required Extenet to submit a revised RF emissions study that accounts for the likelihood that AT&T and T-Mobile will co-locate their radio equipment on the poles with a combined output of 320 watts.

50.     Extenet's revised RF emissions report dated September 4, 2020 concluded that radiation levels exceeding FCC's standards would emanate 14.7 feet horizontally and 2.3 feet vertically from the center of the antenna on top of the utility pole located at the intersection of Beach Avenue and B Street, identified by Extenet as "Pole 56."

51.     Pole 56 is located in front of the plaintiff Jane Loeffler's home at 72 B Street, and is approximately 2-3 feet from Ms. Loeffler's property.

52.     The distance between Pole No. 56 and the covered porch attached to Ms. Loeffler's home is approximately 18 feet.

53.     Pole No. 56, is approximately 28 feet from Ms. Loeffler's second-floor bedroom window, which faces the Atlantic Ocean.

54.     The distance between Pole No. 56 and plaintiff Susan Short Green's house at 71 B Street is approximately 50 feet.

55.     The distance between Pole No. 56 and plaintiff Bethany Bartlett's house at 70 B Street is approximately 100 feet.

56.     Extenet concluded in its final RF emission report that since the plaintiff Jane Loeffler's home is 28 feet from Pole 56, "there is no area on or in the nearby home that will

exceed the [FCC's] limits."

57.     Extenet's conclusion mistakenly relied on a setback distance of 28 feet, which may be an accurate measurement to the exterior wall of the house, but excludes the front yard and the wraparound porch, which are frequently occupied during warm weather months.

58.     Extenet's September 4, 2020 RF emissions report does not comply with the SWF Regulation requiring documentation of radial distances of proposed antennas "to accessible spaces on and within such [habitable] structures and outdoor areas." Regulation, § 6(c)(ix).

59.     Contrary to the SWF Regulation, Extenet has provided no evidence that it obtained a license to attach equipment to the three poles from HMLP as required under the Pole Attachment Agreement, or obtained HMLP's permission to replace the three poles with new, taller poles. Regulation, § 6(g).

60.     The Settlement Agreement also required Extenet to provide a sound study prior to construction on each site, demonstrating that the facilities will not violate the state's noise regulation.

61.     The SWF Regulation requires applicants to submit *with their application* documentation evidencing compliance with the state's noise regulation. Regulation, § 6(i).

62.     Extenet provided a sound study to the Board on July 14, 2020.

63.     The sound study does not comply with the Settlement Agreement or the SWF Regulation, because it assumes that sound levels should be averaged over 24 hours to determine compliance with the state's noise regulation, rather than measuring sound increases against ambient levels at specific times during the day.

64.     The SWF Regulation further prohibits cooling fans from emitting sound in excess of 35 dBA "at the nearest residential occupied space including... porches." Regulation, § 10(d).

65.     Extenet's sound study indicates that the cooling fans associated with its facilities will produce, at points 20 feet away from the fans, sound levels ranging between 38 dBA to 51 dBA, depending on the orientation of the fan and the fan speed.

66.     According to Extenet's design specifications, the cooling fan attached to Pole 56 will face Ms. Loeffler's porch and bedroom window.

67.     Ms. Loeffler's porch is approximately 18 feet from Pole 56, and therefore Extenet's fan will violate the SWF Regulation.

68.     Under Section 11(iii) of the SWF Regulation, small wireless facilities are prohibited on collector streets and local streets unless the applicant demonstrates that it cannot provide coverage to its customers without doing so, or that this prohibition is discriminatory vis-à-vis the Town's treatment of other wireless carriers.

69.     Beach Avenue is either a collector street or a local street.

70.     In its supplemental application materials filed with the Board, Extenet refused to justify the need for its proposed wireless facilities on Beach Avenue.

71.     Extenet has not produced any evidence that a coverage gap exists that necessitates the wireless facilities at the proposed Beach Avenue locations.

72.     Under Section 11(iv) of the SWF Regulation, wireless facilities and antennas shall not be placed in front of residential structures, and shall not interfere with views from residential structures.

73.     The homes of Plaintiffs Jane Loeffler and Susan Short Green front on Beach Avenue, directly across from the beach and the Atlantic Ocean.

74.     Pole 56 is located in front of Ms. Loeffler's home, and diagonally across from Ms. Green's home, and the proposed wireless facilities will interfere with views of the beach and

the ocean from all of the Plaintiffs' homes and properties.

75.    Under Section 12, the SWF Regulation expresses three preferred general locations for small wireless facilities.

76.    Extenet's proposed wireless facilities do not meet any of the three preferred general locations.

77.    The wireless facilities on Pole 56 would be within the sight distance triangle at the intersection of B Street and Beach Avenue, in conflict with Section 12.5(j) of the SWF Regulation.

78.    On October 21, 2020, the Board convened a public hearing and voted to issue the grants of locations under G.L. c. 166, § 22.

**Count I – Certiorari**
**(G.L. c. 249, § 4)**

79.    Paragraphs 1 - 78 are re-alleged.

80.    An action in the nature of certiorari, pursuant to G.L. c. 249, § 4, "correct[s] errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or appeal."

81.    The first sentence of G.L. c. 166, § 22 provides:

> A company desiring to construct a line for such transmission upon, along, under or across a public way shall in writing petition the board of aldermen of the city or the selectmen of the town where it is proposed to construct such line for permission to erect or construct upon, along, under or across said way the wires, poles, piers, abutments or conduits necessary therefor.

82.    Section 22 does not include equipment serving *wireless* telecommunications.

83.    A utility company's ability to construct poles and lines in the public way under G.L. c. 166, § 22 is limited by the prescription in G.L. c. 166, § 21 that "such company shall not incommode the public use of public ways or endanger or interrupt navigation."

84.    Extenet's proposed wireless facilities "incommode" the public use of [Beach Avenue and B Street].

85.    The Board's Decision to approve the grants of locations under G.L. c. 166, § 22 was arbitrary and capricious, where the proposed wireless facilities violate numerous provisions of the Board's SWF Regulation.

86.    The Board made no written findings in its Decision, other than the fact that the Settlement Agreement obligated the Board to issue the grants of locations.

87.    The Board's decision-making was based not on factors set forth in the statute or the SWF Regulation, but rather on extraneous considerations, namely a desire to avoid defending a specious lawsuit in federal court.

88.    The Board's Decision is not supported by substantial evidence, is arbitrary and capricious, and is an abuse of discretion.

### Count II – Private Nuisance
### (Against Defendant Extenet Only)

89.    Paragraphs 1 – 88 are re-alleged.

90.    The establishment of Extenet's proposed wireless facility on Pole 56 will result in predictable noise levels on the plaintiffs' properties that will exceed limits set forth in the SWF Regulation, and which will violate the state's noise regulation.

91.    The establishment of Extenet's proposed wireless facility on Pole 56 will result in the emission of radio frequency radiation on the plaintiffs' properties at levels that exceed even the FCC's arbitrarily-high Maximum Permissible Exposure limits.

**Count III – Trespass**
**(Against Defendant Extenet Only)**

92.   Paragraphs 1 - 91 are re-alleged.

93.   The propagation of noise and elevated radiation levels from the Pole 56 wireless facilities constitutes an invasion of the plaintiffs' interests in the exclusive possession of their respective properties, and constitutes actionable trespass.

**Prayers For Relief**

WHEREFORE, the plaintiffs request that this Court:

1.   Annul the Board's Decision;

2.   Enjoin the construction and operation of the wireless facilities approved in the Decision;

3.   Award the plaintiffs damages, costs and fees in this action; and

4.   Grant such other relief as it deems just and proper.

PLAINTIFFS,

By their attorneys,

Daniel C. Hill (BBO #644885)
Dennis A. Murphy (BBO #645168)
Kaitlyn Baptista (BBO #693392)
HILL LAW
6 Beacon Street, Suite 600
Boston, MA 02108
(617) 494-8300
dhill@danhilllaw.com

Dated: December 21, 2020