## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXTENET SYSTEMS, INC.,<br><br>                          Plaintiff,<br><br>vs.<br><br>THE TOWN OF HULL and THE TOWN OF HULL BOARD OF SELECTMEN, and DOMENICO SESTITO, GREG GREY, JOHN D. REILLY, KEVIN RICHARDSON, and JENNIFER BERARDI-CONSTABLE, in their capacities as members of the TOWN OF HULL BOARD OF SELECTMEN<br><br>                          Defendants. | Civil Action No. 20-CV-10394-WGY |

## EXTENET SYSTEMS, INC.'S OPPOSITION TO MOTION TO INTERVENE

Now comes the Plaintiff, ExteNet Systems, Inc. ("ExteNet") and respectfully submits this Opposition to the Motion to Intervene of Susan Short Green, Jane Loeffler, and Bethany Bartlett [Docket No. 8] (the "Motion to Intervene" and the "Proposed Intervenors") in the above-captioned matter.

## PRELIMINARY STATEMENT

As the Proposed Intervenors recognize, they seek to intervene in a matter that is the subject of a settlement agreement (the "Settlement Agreement") between ExteNet and the Town of Hull (the "Town" or "Hull") by and through its Board of Selectmen (the "Board") that was approved by the Board at its regularly scheduled meeting on June 25, 2020 and fully executed on or about July 6, 2020. *See Exhibit E to Affidavit of Susan Short Green* (ECF#10-5). The Settlement Agreement concluded ExteNet's multi-year saga, as set forth in the Complaint, to expand its existing small cell network within Hull by locating three additional small wireless facilities with the Town's public right-of-way. Contrary to the Proposed Intervenors

characterizations, the Settlement Agreement is not "contingent."  Like many settlement agreements, it contains provisions that must be satisfied by the parties, but it is not conditioned on the occurrence of any events outside of the parties' obligations set forth therein (e.g. it does not require an order or consent decree to be entered by this Court).  It is fully-executed and both ExteNet and the Town have undertaken steps to meet their respective obligations, including the Town's issuance of the relief necessary for ExteNet to construct the proposed small wireless facilities that are the subject of this action.  Simply put, the Proposed Intervenors are too late.

Proposed Intervenors cannot request this Court to unwind the fully-executed and binding Settlement Agreement nor request this Court to reverse the relief the Town granted on October 21, 2020.  In addition, Proposed Intervenors do not have sufficient interest in the general enforcement of the Town's "SWF Wireless Facilities and Similar Structures Policy, Rules and Regulations" ("SWF Regulations") in order to intervene and defend ExteNet's claims that the SWF Regulations are preempted by the Telecommunications Act of 1996 47 U.S.C. 332(c)(7) and 253(a) (the "TCA").  Therefore, ExteNet respectfully requests this Court deny Proposed Intervenors' Motion to Intervene.

## FACTUAL BACKGROUND

1. ExteNet builds, owns, and operates wholesale, neutral-host small wireless facilities that improve the coverage and capacity of wireless telecommunications networks. ExteNet is registered with the Massachusetts Department of Telecommunications and Cable to provide intrastate telecommunications services within the Commonwealth.

2. As more fully described in the Complaint, in order to serve its customer Verizon Wireless, ExteNet seeks to add three additional small wireless facilities to be mounted on replacements for existing Hull Municipal Light Plant utility poles at the same locations on the

2

public right-of-way of Beach Avenue within the Town; referred to as Node 10, Node 11 and Node 12 (collectively, the "Sites"). *See* Affidavit of Haran Rashes, ("Rashes Aff."), ¶ 7.

3.        ExteNet's efforts to locate the three sites date back to the fall of 2017, and resulted in two separate applications to the Town through its Board of Selectmen (the "Board") for authority to construct the Notes and the Sites.  The first application was on or about June 5, 2019 (the "First Application") and the second was on or about September 23, 2019 (the "Second Application") and both sought authority to construct the same Sites.  Both the First and Second Applications were denied.  ExteNet filed the present action appealing the Town's denial of the Second Application.  Rashes Aff."), ¶¶ 8-13.

### A.  The Present Action and Settlement

4.        On February 26, 2020, ExteNet timely commenced this action (the "Action") asserting four claims against the Town of Hull: Count I and Count II assert that the SWF Regulations on their face and as applied are preempted by the TCA (the "Preemption Claims"), Count III asserts that the Board's denial effectively prohibits the provision of wireless services in violation of section 332(c)(7)(B) of the TCA (the "TCA Claim"), and Count IV, asserts that the Town's actions and omissions are in violation of the TCA, 47 C.F.R. § 1.6003, and various Federal Communications Commission ("FCC") Orders and, as a remedy, seeks an injunction requiring the Town to issue any necessary permits and authorizations to allow ExteNet to install the Notes at the Sites (the "Injunction Claim").

5.        On June 25, 2020, after months of arm's length negotiation between the parties, the Board voted to authorize its Chair, Jennifer Berardi-Constable to execute the Settlement Agreement between ExteNet and the Town and or about July 6, 2020, the parties fully-executed the Settlement Agreement. *See Settlement Agreement, pp. 1, 8.*

6.      As a result of the Settlement Agreement, on July 21, 2020 ExteNet and the Town filed a Joint Motion to Stay, seeking a stay of this action or, in the alternative, extension of the Town of Hull's deadline to Answer to October 2, 2020.  Notably, the parties' Joint Motion to Stay explicitly referenced the Settlement Agreement stating: "The parties have agreed to and fully-executed a Settlement Agreement that requires action [approval of the requested relief] by the Board at a public hearing."  *See* Joint Motion to Stay, Docket No. 7, p. 1.

7.      In reliance on the Settlement Agreement ExteNet took multiple steps, including incurring additional costs for its consultants to produce the additional reports and provide the additional information required by the terms of the Settlement Agreement and the Town granted approval for the construction of the Sites.  *See* Rashes Aff., ¶¶ 17-18, 21-26.[1]

8.      The Settlement Agreement affords the Town a degree of oversight and control that it is not otherwise entitled to demand under applicable law or its own regulations.  ExteNet agreed to this oversight and control in good faith and to avoid further delays in delivering the Sites per its agreement with Verizon Wireless. Rashes Aff."), ¶¶ 15-16.

**B.  The Permit Approval and Intervenors State Court Action**

9.      Following execution of the Settlement Agreement, ExteNet conducted several Radio Frequency ("RF") Exposure Assessments required by the Settlement Agreement.  These Assessments went beyond what ExteNet normally provides to a municipality and exceeded what is allowed pursuant to 47 U.S.C. § 332(c)(7)(B)(iv).  They included hypothetical maximum pole loads with more radios than ExteNet proposed to build and were completed in a format acceptable to the Town's consultant.  The Town's consultant worked with several iterations of

---

[1] Contrary to the Proposed Intervenors' assertion of its "continued failure" to comply with the SWF Regulations, the Settlement Agreement between the Town and ExteNet expressly dictates how ExteNet is to comply with the SWF Regulations.  *See* Settlement Agreement, ¶ 4 c.

4

these Assessments before he was satisfied that they met the Town's standards. Rashes Aff., ¶¶ 15, 17, 21-22.

10.     In accordance with the Settlement Agreement, at an open meeting held on October 21, 2020 (the October 2020 Hearing), the Board considered and approved the Sites.

11.     During the October 2020 Hearing, Counsel to the Town, James Lampke summarized the litigation and Settlement Agreement, commenting that "[t]he Settlement is a win for the Town as Extenet (sic) has complied with the regulations adopted by the Town and the necessary requirements of the law." *See* Hull Board of Selectmen Final Minutes October 21, 2020 attached to the Affidavit of Brian S. Grossman ("Grossman Aff.") as Exhibit A.

12.     Samuel Perkins, outside counsel for the Town, stated that ExteNet had complied with the SWF Regulations and the Settlement Agreement by providing satisfactory information related to radio frequency emissions. *See id.* He explained that ExteNet could not construct the Sites until Sound Studies showing that each of the three Sites will not violate the noise pollution standards set by the Commonwealth of Massachusetts were submitted and accepted by the Town's consultant. *See id.*

13.     David Maxson, the Town's consultant, confirmed that ExteNet's Radio Frequency Assessments satisfactorily demonstrated that the Sites will comply with state and federal safety standards concerning radio frequency exposure. *See id.* Attorney Perkins noted that ExteNet met the FCC's radio frequency emissions standards by a "substantial margin." *See id.*

14.     Town Manager, Philip Lemnios, stated that the Town had spent a great deal of time and money attempting to get ExteNet to find alternate locations and to demonstrate that installing the Sites will not harm the community. *See id.* He reiterated that ExteNet's sites complied with the SWF Regulations. *See id.*

5

4827-6038-6777.2

15.     The Board approved the Second Application and consistent with the Settlement Agreement included a condition requiring the submission of Sound Studies that are approved by the Town's consultant before the Sites could be constructed. *See id.*

16.     Contradicting Proposed Intervenors claims that the Town has abdicated its responsibilities, despite the Settlement Agreement, the Town has not simply rolled over. ExteNet and the Town have had significant disagreements over the information necessary to satisfy the terms of the Settlement Agreement both leading up to and after the October 2020 Hearing. As of the date of this Opposition, ExteNet has since provided the Sound Studies and will have provided four separate responses to comments made by the Town's outside consultant and the Town has yet to approve the Sound Studies.  Rashes Aff., ¶¶ 19-23, 25-28.

17.     On December 21, 2020, the Proposed Intervenors filed a complaint in Massachusetts Superior Court seeking certiorari review of the Board's decision (the "State Court Action").

**ARGUMENT**

**A. The Proposed Intervenors Lack Standing to Defend this Action Because the Town Has Executed the Settlement Agreement Prior to Intervenors Motion and Approved ExteNet's Permit Application**

18.     ExteNet filed this action seeking declaratory and injunctive relief under the TCA, including expedited review of the Board's denial of the Second Application.  More than six months before the Proposed Intervenors attempt to insert themselves into this matter, a binding fully-executed Settlement Agreement resolving all claims was executed by the parties.  The Settlement Agreement does not require the Court to enter a consent decree endorsing the Settlement Agreement in order for it to be effective.  ExteNet intends to file a notice of dismissal ending this Action upon the Town's approval of the Sound Studies.

6

19.     The Motion to Intervene states that they seek to "protect their rights," but the Proposed Intervenors do not explain what specific actions they would take in this litigation if they were permitted to intervene.  *See* Motion to Intervene, p. 1. Presumably, the Proposed Intervenors want to assume the former position of the Town and attempt to defend the validity of the SWF Regulations against the Preemption Claims and the Board's prior denial of the Second Application against the TCA Claim and the Injunction Claim.  *See* Memorandum of Reasons In Support Of Susan Short Green, Jane Loeffler, And Bethany Bartlett's Motion to Intervene (the "Memorandum"), p. 9 ("The Proposed Intervenors intend to make arguments, establishing that the January 27, 2020 denial decision and SWF Regulations do <u>not</u> violate the TCA.").  However, the Proposed Intervenors must establish standing under Article III of the Constitution with respect to the subject matter that forms the basis of the Preemption Claims, the TCA Claim, or the Injunction Claim.  They cannot do so.

20.     Federal standing doctrine has two elements: an "irreducible constitutional minimum," which requires that a plaintiff allege a concrete injury that is fairly traceable to the defendant's conduct and likely to be redressed by the requested relief, and a "prudential component," which requires the plaintiff to assert its own legal rights and interests and not those of third parties.  *See Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 637 (1st Cir. 2013); *see also Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 30 (1st Cir. 2007) (to establish prudential standard, a party must show that its interests fall within the "zone of interests" protected by the law at issue).

21.     With respect to the Preemption Claims, the Proposed Intervenors lack standing to defend the SWF Regulations against ExteNet's preemption claims.  *Cf. Harvard Square Def. Fund, Inc. v. Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 495 (1989) (stating that a

7

"general civic interest in the enforcement of zoning laws . . . is not enough to confer standing."). Moreover, with ExteNet and the Town having settled and the Town having issued the relief sought by ExteNet to allow the installation of the Sites, the Proposed Intervenors would essentially be asking a federal court to issue an advisory opinion on whether the SWF Regulations runs afoul of the TCA.  Federal courts lack subject matter jurisdiction to issue advisory opinions. *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) ("If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.").

22.     With respect to the TCA Claim and the Injunction Claim (which is simply a request for a remedy derivative of the TCA Claim), the relief sought has already been granted by the Town and Proposed Intervenors cannot establish nor have they even argued they have any interest with respect to two of the three Sites (Proposed Intervenors allegations only relate to Pole #56 i.e. Node 12).  The First Circuit has previously held that private citizens like the Proposed Intervenors do not have standing to bring their own claims under section 332(c)(7)(B) of the TCA.  *See Indus. Commc'ns & Elecs., Inc. v. Town of Alton, N.H. ("Alton")*, 646 F.3d 76, 79 (1st Cir. 2011) (holding that persons adversely affected by the *denial* of a request to construct a wireless facility have standing to sue under 47 U.S.C. § 332(c)(7)(B)); *see also Drago v. Garment*, 691 F. Supp. 2d 490, 494 (S.D.N.Y. 2010) ("There is no language in the section to allow someone to bring an action in federal court for adverse affects flowing from the *granting* of a request to construct personal wireless service facilities."); *Mason v. O'Brien*, No. 1:01-CV-1556, 2002 WL 31972190, at *5 (N.D.N.Y. Sept. 30, 2002).

23.     *Alton* recognizes a narrow exception to the rule that private citizens lack standing to challenge or defend TCA claims.  In *Alton*, the abutters were allowed to intervene in the TCA

8

case when the town had denied the tower developer's request for a variance to construct a cell tower.  *See Alton*, 646 F.3d at 79.  In *Alton,* the abutters intervened <u>before</u> the town reached a settlement with the developer and the town and developer asked the federal court to enter a consent decree endorsing that settlement.  The First Circuit held that the abutters had suffered an "injury in fact" that was causally connected to the TCA case because the consent decree would preempt their rights under New Hampshire law to challenge the zoning ordinance on the grounds that it was granted unlawfully.  *See id.* at 80 ("[W]hat is at issue here is not merely a private settlement between parties . . . but, by virtue of the court's adoption and entry of a consent decree, a legally operative judgment that overrides state law and the [abutters'] rights under state law that would prevail *unless overridden by the decree*.") (Emphasis in original).

24.     Two notable distinctions between the present matter and *Alton*, is that the in *Alton* the Court had already granted the abutters motion to Intervene prior to the settlement being entered into by the developer and the Town and the *Alton* settlement required the Court's entry of a consent decree.  The Settlement Agreement does not require the Court to enter a consent decree and instead the parties anticipate the filing of a Stipulation of Dismissal (or Notice of Voluntary Withdrawal, if appropriate).  The Settlement Agreement is already fully-executed and both ExteNet and the Town have taken actions in reliance on the Settlement Agreement, including the Town having granted the relief as required by the Settlement Agreement.  By intervening in this action, the Proposed Intervenors cannot undo those actions.

25.     None of the pre-*Alton* cases cited by the Proposed Intervenors in the Memorandum discuss Article III standing in detail.  Instead, these cases simply suggest without analysis that the intervenors had an interest in the outcome of the litigation.  *See Metheny v. Becker*, 352 F.3d 458 (1st Cir. 2003) (vacating district court's order dismissing abutter's action

challenging consent decree for lack of subject matter jurisdiction, remanding with instructions that the action be remanded to state court, and stating in dicta that "we see no obvious reason why abutting landowners who fail to intervene in a federal action brought under the TCA should not be able to be joined as parties under [Federal Rule 19(a)(2)].").  *Brehmer v. Planning Bd. of Town of Wellfleet*, 238 F.3d 117, 121-22 (1st Cir. 2001) (affirming summary judgment in favor of telecommunications provider in action brought by abutters to set aside consent judgment authorizing construction of cell tower and stating in dicta that the abutters could have intervened in the TCA case and their allegations "appear to be sufficient to plead Article III standing"); *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson ("Hanson")*, 311 F. Supp. 2d 142, 153 (D. Mass. 2004) (finding without conducting an Article III analysis that abutters interests in the TCA case were "clear").

26.     In *Varsity Wireless, LLC v. Town of Boxford ("Boxford")*, the Court held the intervenors had a right to intervene under Federal Rule 24(a)(2), citing to both *Alton* and *Hanson* for the proposition that "[c]ourts have generally found that abutters have a sufficient interest in similar litigation under similar circumstances."  *See* No. CV 15-11833-MLW, 2016 WL 11004357, at *5 (D. Mass. Sept. 9, 2016).[2]  *Boxford* lacks any Article III standing analysis and like *Alton,* in *Boxford*, the parties had not already entered into a binding settlement agreement at the time of intervention.

27.     Accordingly, the Court should deny the Motion to Intervene because the Proposed Intervenors lack standing under Article III of the Constitution to assert any of the existing parties' claims or defenses and lack any independent claims under the TCA.

---

[2]  In *Varisty Wireless Investors, LLC v. Town of Hamilton*, the Court distinguished the case from *Alton* and held that individual Board members lacked standing to object to the town's settlement agreement with the tower developer. *See* 370 F. Supp. 3d 292, 298-99.  This case did not involve an attempt by private citizens to intervene in the dispute.

**B.  The Proposed Intervenors Cannot Establish a Right to Intervene Under Federal Rule 24(a)**

28.    A person has the right to intervene under two circumstances.  A person may intervene when a federal statute specifically grants such an unconditional right and the non-party timely moves to intervene.  Fed. R. Civ. P. 24(a)(1).  The second circumstance when a person may intervene by right is when the following four conditions are met:

1)  a timely motion is made to intervene;

2)  the person has an interest in the property or transaction that is the subject matter of the action;

3)  the person must be so situated that the disposition of the action may as a practical matter impair or impede the person's ability to protect that interest; and

4)  that interest will not be adequately represented by the existing parties.

Fed. R. Civ. P. 24(a)(2); *Travelers Indemn. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).

The Proposed Intervenors do not cite any provision of the TCA or other applicable law that gives them an express right to intervene on the side of the Board in this action.  Accordingly, their path to mandatory intervention must proceed under Federal Rule 24(a)(2).

**1.  The Motion to Intervene is Untimely**

29.    The timeliness of the filing of the motion is critical to whether or not a party will be allowed to intervene.  The First Circuit proscribes a four-factor test to determine if a motion to intervene is timely.  Specifically, the Court considers:

1)  the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene;

2)  the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly;

3)  the prejudice the prospective intervenors would suffer if not allowed to intervene; and

4)  the existence of unusual circumstances militating for or against intervention.

*Caterino v. Barry*, 922 F.2d 37, 40 (1st Cir. 1990) (*quoting United States v. Metro. Dist.*

*Commn'n*, 865 F.2d 2, 5 (1st Cir. 1989).

### a.   The Proposed Intervenors knew about the settlement for at least six months.

30.     "Timeliness ... is the sentinel that guards the gateway to intervention."  *In re*

*Intuniv Antitrust Litig.*, No. 1:16-CV-12653-ADB, 2020 WL 4274507, at *4 (D. Mass. July 24,

2020) (*quoting Candelario-Del-Moral v. UBS Fin. Servs. (In re Efron)*, 746 F.3d 30, 35 (1st Cir.

2014).  The Proposed Intervenors had an affirmative duty to file the Motion to Intervene

promptly after learning that their interests may be affected, which knowledge may be either

actual or constructive.  *See In re Efron*, 746 F.3d at 35.  While simply knowing that the litigation

exists does not start the clock on intervention, "the appropriate inquiry is when the intervenor

became aware that its interest in the case would no longer be adequately protected by the

parties."  *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 154 (D.

Mass. 2004).

31.     In this case, as abutters, the Proposed Intervenors were aware of ExteNet's First

and Second Applications shortly after ExteNet submitted said Applications in 2019.  *See* G.L. c.

166, § 22 (requiring notice to abutters).  They had constructive notice of this action no later than

the first public meeting that considered the litigation nearly a year ago on March 5, 2020.  *See*

Grossman Aff., Exh. B.  A review of the docket in this Action would have provided the Proposed

Intervenors with notice no later than July 21, 2020 that the parties had entered into the

Settlement Agreement, which contemplated that the Board would approve the Second

Application.  *See* Docket Entry No. 7.  Finally, the Proposed Intervenors received notice of the

October 21, 2020 hearing; yet did not seek to intervene or take any action to prevent the Board from approving the Sites in compliance with the Settlement Agreement.

32.     Under these circumstances, the Proposed Intervenors knew or should have known of the potential for the Town's interests in defending this Action to "soften or diverge from their personal interests," *Hanson*, 311 F. Supp. 2d at 153, at least by the time that the Settlement Agreement was publicly disclosed on this docket (six months ago) and perhaps even earlier when the Board began discussing the action in executive session (nearly a year ago).  Under these circumstances, the Proposed Intervenors delay in bring the Motion to Intervene is fatal. *Compare Boxford*, 2016 WL 11004357, at *5 (motion to intervene timely when intervenors filed two weeks after learning of town's settlement efforts) *with Hanson*, 311 F. Supp. 2d at 153-54 (motion to intervene in TCA case untimely when pretrial proceedings and settlement discussions had been going on for almost a year prior).

> **b.  The Proposed Intervenors' delay in seeking to intervene has prejudiced ExteNet.**

33.     Delay is of special importance in a case brought under section 332(c)(7)(B)(v) which guarantees a telecommunications provider an *expedited* judicial review of a local government action.  *See Skyway Towers, LLC v. Lexington-Fayette Urban Cty. Gov't*, No. CV 5:15-301-KKC, 2016 WL 817133, at *5 (E.D. Ky. Feb. 29, 2016). As described in detail above, ExteNet has expended considerable time and resources getting approval for construction of the Sites.  It has been almost a year since it filed this Action and almost seven months since the Settlement Agreement was executed.  Having brought this process to the one-yard-line, ExteNet now faces the prospect of having to litigate against the Proposed Intervenors on two fronts: the State Court Action and this Court further multiplying its costs and delaying the project.

34.     The Proposed Intervenors contend that, had they sought to intervenor sooner, "it would have been rebuffed as premature for failure to exhaust administrative remedies before the Board." *See* Memorandum, p. 6.  This argument is disingenuous.  Nothing in Federal Rule 24 requires an intervenor to "exhaust administrative remedies."  To the contrary, *Alton* and *Boxford* permitted intervention early in each case.  Had the Proposed Intervenors made themselves known at the time when ExteNet was working to settle this matter, ExteNet and the Town would have been on notice that the Settlement Agreement may not actually resolve the litigation.  Instead, ExteNet has spent the last six-plus months seeking to comply with the terms of the Settlement Agreement, incurring costs and expenses for multiple revisions of the required Radio Frequency Assessments and Sound Studies as well as attending the public hearing.  If ExteNet had known that the Settlement Agreement would not bear fruit, it would have spent the last year litigating this matter rather than negotiating and then trying to comply with the Settlement Agreement.

### c.   Denying intervention will not prejudice the Proposed Intervenors.

35.     While requiring ExteNet to continue to litigate the TCA case will frustrate its goal of commencing construction the Sites, the Proposed Intervenors will not suffer any prejudice if the Court denies the Motion to Intervene.  The parties are not requesting the Court enter a consent decree and the Town has already granted the relief pursuant to the Settlement Agreement.  The Proposed Intervenors have appealed the Board's approval to the Massachusetts Superior Court.  As a result, Proposed Intervenors' gain nothing by intervening here.

### d.   Proposed Intervenors do not describe any unusual circumstances militating against intervention.

36.     Proposed Intervenors have not articulated any special or unusual circumstances that would favor intervention in this Action. To the contrary, ExteNet respectfully submits that

because the Settlement Agreement is fully-executed and the Town has already granted the relief

for the Sites, the unique circumstances of this case weigh *against* intervention at this stage.

37.     Accordingly, under the test articulated by the First Circuit in *Caterino v. Barry*,

the Proposed Intervenors cannot establish that the Motion to Intervene is timely.  *See* 922 F.2d at

40.  This failure is fatal to allowing intervention as of right under Federal Rule 24(a)(2).  *See*

*Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998) ("An applicant for

intervention as of right must run the table" when satisfying the preconditions of Federal Rule

24(a)(2)).

## 2.   The Proposed Intervenors Have No Interest in the Dispute Between ExteNet and the Town

38.     As argued above, the Proposed Intervenors lack Article III standing to appear and

be heard in this Action precisely because they have no interest in the dispute.  The subject of this

Action is whether the Town violated the TCA when it issued its original decision denying

ExteNet's application.  ExteNet and the Town have resolved this dispute and the Town has

approved the Second Application rendering its earlier denial moot.

39.     The Proposed Intervenors are not asking to intervene to support the Town position

as an amicus or carry its burden in defending the denial of the Second Application.  *Compare*

*Los Angeles SMSA Ltd. P'ship v. City of Los Angeles, California*, No. LACV1604954JAKSKX,

2019 WL 4570012, at \*5 (C.D. Cal. July 31, 2019), *aff'd in part, appeal dismissed in part*, 817 F.

App'x 350 (9th Cir. 2020) (recognizing protectable interest of public interest group that had

previously played an important role in the successful appeal of the zoning administrator's

approval of the telecommunications company design application).  Instead, the Proposed

Intervenors are attempting to increase the time and expense that ExteNet will ultimately bear in

undertaking the construction the Sites.  In other words, the Proposed Intervenors are making a

15

cynical calculation that they can wear ExteNet down through litigation.  Not only is such interest
not legal cognizable, it is advanced in bad faith.  *See Mason*, 2002 WL 31972190, at *5 ("The
intent of Congress in passing [the TCA] was clearly not to create another forum or avenue of
review for property owners to challenge local zoning decisions to which they do not agree.");
*accord Drago*, 691 F. Supp. 2d at 495.

40.     In sum, recognizing the Proposed Intervenors right to intervene under the
circumstances in this case, would tacitly endorse an end-run around the TCA's limited right of
action under 47 U.S.C. § 332(c)(7)(B)(v).  It would allow any private citizens to delay and
subvert the powers of state and local governments to resolve disputes over the proposed
construction of telecommunications structures and would frustrate the policy goals of the TCA.
While private citizens might have standing in certain circumstances to bring claims under the
TCA this case does not present such circumstances.

### 3.  The Outcome of this Action Will Not Impair the Proposed Intervenors' Interests

41.     Pending the Town's approval of the Sound Studies, ExteNet will file a notice of
dismissal in this Action.  ExteNet does not seek the entry of a consent decree.   Further, the
outcome Proposed Intervenors seek to prevent, the granting of approval for the Sites, has already
occurred.  Accordingly, there is no practical need to allow the Proposed Intervenors to intervene
in this case.

### 4.  The Proposed Intervenors' Interests Are Adequately Represented

42.     While Proposed Intervenors may wish to prevent the construction of the Sites at
any cost, the Town has negotiated a fair and favorable settlement.  Contrary to Proposed
Intervenors allegations that the Town "abdicated the defense" of its denial the Town has
extracted meaningful concessions from ExteNet.  *See Patch*, 136 F.3d at 207 ("A party that seeks

to intervene as of right must produce some tangible basis to support a claim of purported inadequacy."); Rashes Aff., ¶¶ 15-16.

43.     As evidenced by the minutes from the October 2020 Hearing, the Town worked diligently within the constraints of the TCA and ensured that the competing interests of the Town, its citizens, and ExteNet were satisfied to the greatest extent possible.  The Town has obtained ExteNet's willing compliance with the SWF Regulations in the latter's commitment to provide additional studies and reporting to ensure the safety of the Sites.  The Proposed Intervenors might still hold private grievances specifically related to the location of the Sites, but permitting them to intervene in this Action, at this stage, will not advance those interests.  In short, the Proposed Intervenors fail to make any argument that they would have added some necessary element to these proceedings that the Town or Board could not have adequately covered.  *See Hanson*, 311 F. Supp. 2d at 151 (observing that the presumption that the intervenor is adequately represented is "ratcheted upward" when the intervenor attempts to enter on the same side as a government agency).

44.     Moreover, it is entirely reasonable that the Town would reach a settlement with ExteNet.  Such settlements are common in TCA litigation. *See Brehmer v. Planning Board of the Town of Wellfleet*, 238 F.3d 117, 121 (1st Cir. 2001) (concluding that, "in cases such as this one, where a planning board knows to a relatively high degree of certainty that its earlier denial of a special permit is violative of the TCA, it is not unreasonable for the board to settle with the applicant on the terms most favorable to the town rather than to engage in litigation doomed from the start . . . . such settlements are fully consistent with the TCA's aims."); *Town of Amherst, New Hampshire v. Omnipoint Communications*, 173 F.3d 9, 17 (1st Cir. 1999) ("[I]t is in the common interest of [zoning boards] and [telecommunications companies] to find ways to

permit the siting of towers in a way most congenial to local zoning"); *Patterson v. Omnipoint Communications, Inc.*, 122 F. Supp.2d 222, 228 (D. Mass. 2000) (in appropriate circumstances, "it behooves that board to settle with the Plaintiff company on the most favorable terms possible; rather than spend more on litigation, with the potential to receive less favorable terms from a judgment").  Allowing the Proposed Intervenors in after the Settlement Agreement is fully consummated would have a chilling effect on such settlements.  As happened here, it can take months and a significant amount of time, effort and cost for both wireless communications infrastructure providers and municipalities to fully negotiate and fulfill the terms of a settlement agreement.  It is questionable whether parties will be willing to devote such time, cost and energy into reaching a settlement, and fulfilling the terms thereof, only to have people that sat on the sidelines suddenly appear out of thin air to undermine it.  Since last summer, ExteNet and the Town have been actively engaged in settlement efforts, including correspondence on contentious issues, scheduling a meeting of the parties, exchanging information, evaluating new information, preparing and evaluating new technical data, and making sensitive and risk laden decisions and mitigation proposals in an effort to settle. Rashes Aff., ¶ 28.  ExteNet has expended significant resources in first reaching and then performing under the Settlement Agreement.  Rather than waste months that may lead to a settlement that nets them nothing, providers would end up litigating and municipalities would end up defending cases that both would prefer to settle.

45.     Accordingly, for the foregoing reasons, the Proposed Intervenors have no right to intervene under Federal Rule 24(a).

**C.  The Court Should Not Permit Intervention under Federal Rule 24(b)**

46.    Federal Rule 24(b) permits intervention if the proposed intervenor is given a
conditional right to intervene by a federal statute or "has a claim or defense that shares with the
main action a common question of law or fact."  *See* Fed. R. Civ. P. 24(b)(1).

47.    "Permissive intervention is 'wholly discretionary,' and a court should consider
whether intervention will prejudice the existing parties or delay the action."  *In re Intuniv*
*Antitrust Litig.,* No. 1:16-CV-12653-ADB, 2020 WL 4274507, at *3 (D. Mass. July 24, 2020).
In exercising its discretion to permit intervention, the court must consider whether the
intervention will unduly delay or prejudice the adjudication of the original parties' rights.  *See*
Fed. R. Civ. P. 24(b)(2).

48.    For the same reasons that the Proposed Intervenors have no *right* to intervene, the
Court should not permit them to either under the discretionary provision of Federal Rule 24(b).
To allow the Proposed Intervenors to intervene now would greatly prejudice ExteNet without
changing the ultimate result.

49.    For all these reasons, the prejudice to the existing parties if the Proposed
Intervenors were allowed to intervene at this time is great.

**D.  The Court Should Deny the Motion to Intervene on Procedural Grounds**

50.    Finally, the Court should deny the Motion to Intervene because it fails to comply
with the Federal Rules requiring a motion to intervene be accompanied by a pleading that sets
out the claim or defense for which intervention is sought.  *See* Fed. R. Civ. P. 24(c).  This
requirement is necessary to inform ExteNet about the Proposed Intervenors defenses and helps to
determine whether the Town is an adequate representative of the Proposed Intervenors' claims.
*See Los Angeles SMSA Ltd. P'ship*, 2019 WL 4570012, at *8.  The Proposed Intervenors have

not complied with Federal Rule 24(c).  Attaching a copy of the complaint in the State Court Action is insufficient since the Court has no jurisdiction over the Proposed Intervenors state law claims.  Accordingly, Proposed Intervenors fail to describe what actions they would even take at this stage to assert their interests.  Therefore, the Court should deny the Motion to Intervene for failure to comply with Federal Rule 24(c).

51.     Finally, the Court should consider whether the Proposed Intervenors request to intervene under Federal Rule 24 will "secure the just, speedy, and inexpensive determination" of this Action.  *See* Fed. R. Civ. P. 1 (outlining the scope and purpose of the Federal Rules).

52.     Proposed Intervenors concede that ExteNet and the Town have settled this case and the Town has issued an approval to allow ExteNet to construct the Sites.  *See* Memorandum [Docket No. 9], p. 1.  The Town's approval permits ExteNet to install the Sites subject to providing the Sound Studies to the Town and renders the prior denial moot.  As discussed herein, the Proposed Intervenors lack sufficient interest to defend the general validity of the SWF Regulations under the TCA.  Intervention at this late stage would prolong this Action and prejudice the parties without conferring any benefit on the Proposed Intervenors.

53.     Accordingly, because intervention will not secure the just, speedy, and inexpensive determination of this action, the Court should deny the Motion to Intervene.[3]  *See Romero v. Securus Techs., Inc.*, No. 16CV1283 JM (MDD), 2017 WL 4922845, at *3 (S.D. Cal. Oct. 31, 2017) (denying motion to intervene that would enlarge the scope of the action and result in an undue delay in resolving the action and undermine judicial economy).

WHEREFORE, ExteNet respectfully requests that this Court deny the Motion to Intervene and grant ExteNet such further and other relief as it deems just and proper.

---

[3]  Proposed Intervenors have already filed suit in Massachusetts Superior Court to pursue whatever private claims they might have against ExteNet related to the proposed construction of the Sites.

Respectfully submitted,
EXTENET SYSTEMS, INC.

By its attorney,

*/s/ Brian S. Grossman*
Brian S. Grossman (BBO #641159)
BOWDITCH & DEWEY LLP
200 Crossing Boulevard, Suite 300
Framingham, MA 01702
Tel: (508) 416-2410
Email: bgrossman@bowditch.com

Dated: January 29, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Brian S. Grossman*
Brian S. Grossman

4827-6038-6777.2